## CLEGG and others vs. JONES and others.

EQUITY: VERDICT: EXCLUSIVE MINING LEASE. *(1) Verdict in equity not conclusive. (2, 3) When evidence of exclusive right to mine land must be clear. (4)* NEW TRIAL.

1. In an equitable action a verdict has not the same conclusive weight as in an action at law; and, on appeal from a judgment pursuant to such verdict, this court reviews the evidence.
2. One who claims an exclusive right to mine on a tract of land by virtue of an alleged parol lease, and seeks a perpetual injunction restraining others from mining thereon, though the latter do not interfere with his development of his own range, must establish such right by clear and satisfactory evidence; and the evidence in this case (for which see the opinion) is held insufficient.
3. Whether such a parol lease without expressed limit of time, if established by clear and unequivocal proof, would be valid under the statute of frauds, as a lease for one year; and whether it would be renewed from time to

time by payment of rent, not considered; but *it seems* that ch. 260 of 1860, amended by ch. 117 of '1872, does not affect the case.

4. No probability appearing that the evidence would be materially different on a new trial, this court, on reversing a judgment for the plaintiffs, directs a dismissal of the complaint.

APPEAL from the Circuit Court for *Iowa* County.

Action for a perpetual injunction, restraining defendants from mining on a certain portion of a forty-acre tract of land. The relief was claimed in the complaint upon two grounds: 1. That plaintiffs had the exclusive right to mine upon said tract, under a parol lease from one Vivian, the agent of the owner, made June 24, 1873, under which they claim to have been in exclusive possession of the premises until disturbed in their possession by defendants in October, 1876. 2. That the place where defendants were mining was part of a valuable discovery, lode or range struck and discovered by plaintiffs in 1870. The latter claim, however, was abandoned on the trial. The answer, among other things, denied plaintiffs' exclusive right.

The evidence for the plaintiffs, and the exceptions taken by the defendants, will sufficiently appear from the opinion. The judge submitted to the jury the following questions: "What were the terms of the lease between Vivian and the plaintiffs, if any? Was it a lease of all the minerals contained in a certain piece of land, as claimed by the plaintiffs?" The jury answered the second question affirmatively. The court afterwards found the facts substantially as alleged in that part of the complaint which was not abandoned, and rendered judgment for the relief demanded; from which the defendants appealed.

There was a brief for the appellants, signed by *Wm. E. Carter*, with *Reese & Carter*, and oral argument by *Wm. E. Carter*. They contended, 1. That there was no sufficient evidence of the alleged lease or exclusive right. 2. That there was no consideration to support the alleged lease; plaintiffs,

at the date thereof, not having undertaken to do or pay anything in consideration of a new right granted. 3. That the case was not affected by sec. 2, ch. 260, Laws of 1860, because no discovery or prospect has been "struck" upon the property claimed to have been leased June 24th, 1873, and indeed it is not claimed that plaintiffs have struck any discovery on any land since that date. 4. That, if not protected by that act, the pretended lease was void under the statute of frauds. Upon this point, counsel referred to the brief for the respondents in *Sobey v. Thomas*, 39 Wis., on p. 323.

*Alexander Wilson*, for the respondents, contended, 1. That there was sufficient evidence to support the verdict. 2. That the lease was renewed by each payment of rent, from time to time as the mining progressed. 3. That a parol license to enter upon mineral lands and mine them, for a specified share of the mineral raised, for an indefinite time, with an entry under such license, and an expenditure of labor and money in sinking shafts, running drifts, procuring machinery, and other preparations for mining under the license, gives to the licensee a valid subsisting interest in the real estate, which the licensor can terminate only upon compensation for such expenditure, or the notice necessary to terminate a tenancy at will. *Rerick v. Kern*, 2 Am. L. C., 733; *Wickersham v. Orr*, 9 Iowa, 253, 260; *Beatty v. Gregory*, 17 id., 109; *Bush v. Sullivan*, 3 G. Greene, 344.

Cole, J. The plaintiffs do not rest their claim for an injunction on the ground that the diggings worked by the defendants were upon the same range as that upon which the diggings of the plaintiffs were situated. In the complaint, this was stated as one ground of relief; and it was alleged, among other things, that the lead ores which the defendants had taken and carried away, or which they threatened to take and were about to carry away, were taken from a range which was connected with and formed a part of the plaintiffs' dis-

covery or range. But upon the trial below, the plaintiffs, before any testimony was offered, withdrew all claim to relief upon that ground; and their learned counsel, on the argument in this court, said he did not rely upon that ground to sustain the judgment. The plaintiffs' right to the perpetual injunction is founded and must rest entirely upon their rights under the alleged parol lease, made by Vivian, the agent of the owner, with them, on or about the 24th of June, 1873; in and by which, they claim, the exclusive right and privilege was granted them to mine, according to mining usages, for lead and zinc ores, upon any part of the tract of land lying northward of the line designated in the complaint, upon paying one-tenth part of all ores, whether of lead or zinc, raised by them from the leased premises, as rent therefor. After all the evidence had been received, the counsel for the defendants asked the court to submit to the jury certain questions. This the court declined to do, but did submit the question as to what were the terms of the lease made between Vivian and the plaintiffs, if any; and whether it was a lease of all the mineral contained in the piece of land above mentioned, as claimed by the plaintiffs. The jury gave an affirmative answer to the question. A number of the errors assigned relate to the rulings of the court admitting or excluding evidence; to the refusal to submit to the jury the questions asked for by the defendants; and to errors in the charge. But these errors were not argued by defendant's counsel, except so far as they were involved in the discussion of the following questions: (1) Does the evidence sustain the alleged exclusive lease? and (2) If so, is the lease valid and binding in law, and of such a character that it could not be revoked by the landlord?

This was an equitable action, and the finding of the jury upon all questions of fact cannot have the same conclusive effect as in actions at law. *Gill v. Rice*, 13 Wis., 549. The verdict of the jury is merely to enlighten the conscience of the chancellor. *Johnson v. Johnson*, 4 Wis., 135. We have

therefore to examine the evidence for ourselves, and see if it sustains plaintiffs' claim to an exclusive right and privilege to mine upon the whole north part of the forty-acre tract. And upon that question we are very clear that the evidence establishes no such right.

The principal evidence adduced to prove this exclusive right was the testimony of the plaintiff *Samuel Clegg.* He details the circumstances attending the making of the parol lease, and even attempts to give the very words used by Vivian when he made it. *Clegg* had been mining upon the forty-acre tract for some years, and had made a valuable discovery of mineral thereon. He says, in substance, that on the 24th of June, 1873, he went to see Vivian and to pay rent due. He then stated to Vivian something about trespassers, and current reports that a party of men were coming upon the north part of this forty, between the plaintiffs' shaft or diggings and Glandville's fence; stated that the plaintiffs were then paying out, for men, wages and materials, about $500 per month; that it looked hard that men should come and head the plaintiffs off that way, especially as Vivian had previously granted him, the witness, full permission, and had said to him that no one should come north or south of him on these diggings to interfere with witness in any shape. In reply to these remarks, Vivian said: " Old man, rest satisfied, there is no one shall come on that land between Johnson Glandville's fence and you, nor east of you, north, south, east or west of you." This is the substance of the testimony in regard to the terms of the parol lease granting an exclusive right to mine on the north part of the tract. And while it is slightly corroborated by other testimony given on the part of the plaintiffs, yet, upon the most favorable construction which can be placed upon it, it fails to establish the exclusive right claimed. The language is loose, vague, uncertain and indeterminate in its meaning. When considered in connection with the other evidence, more especially the testimony of Viv-

ian, it only warrants this inference and establishes this fact: The plaintiff had received permission to mine upon the tract, and was granted the right to prove up his diggings and follow any range he might discover on the land without let or hindrance from any one.   It is evident that *Clegg* was afraid some one would interfere with his rights, or attempt to trespass upon his range.   He therefore sought protection of the agent against any such interference, and was assured that no one should interfere with his diggings, or his right to follow up and prove his range on the land, wherever it should run. This is all, we think, that can be inferred from the language used; and it is precisely what Vivian testifies the right was which he granted.   Without dwelling upon the testimony any further, however, we are constrained to say that the exclusive right to mine upon the tract in question is not established by that clear and satisfactory evidence which is essential to warrant the court in granting a perpetual injunction against others mining on the same, who did not interfere with the plaintiffs' existing rights in developing their range.

If this exclusive right had been established by clear, definite and unequivocal proof, we should then have to determine whether the parol lease would be valid under the statute of frauds.   In *Ganter v. Atkinson*, 35 Wis., 48, by an oral agreement the owner of certain lands gave the plaintiffs the right to enter thereon for mining purposes, and the exclusive right to mine in or upon the same, and to take any ores therefrom, for a certain rent in kind.   The lease was upheld as a lease for one year.   But there the lease was of particular ground, described by metes and bounds.   If, in this case, the parol lease of an exclusive right had been proven, as claimed by the plaintiffs, the question would arise, whether it would be renewed from time to time by payment of rent.   But as the case stands, no such question is before us.   Nor do we see that ch. 260, Laws of 1860, and the amendatory act (ch. 117, Laws of 1872), affects the case.

In some cases this court, on reversing the judgment in an equity cause, has ordered a new trial, where there was reason to suppose that important testimony had been omitted or might be procured which would materially affect the rights of parties, and that the cause of justice would be promoted thereby. In this case, however, there does not seem to be any object in granting a new trial, since there is no probability that the evidence in regard to the parol lease would be changed by our doing so.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.